**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACQUELINE TRAVIS, Special Administrator of the Estate of Duan Travis, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:21-CV-00558-SPM |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., | ) ) ) | |
| Defendant | ) ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. 34) and Plaintiff's Motion for Partial Summary Judgment (Doc. 36). Briefing on the motions is complete. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 11). For the reasons stated below, Defendant's motion will be granted, and Plaintiff's motion will be denied.

## I.   LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Accord Kohlbeck v. Wyndham Vacation Resorts, Inc.*, 7 F.4th 729, 737 (8th Cir. 2021).

1

Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In reaching its decision, a court should not weigh the evidence, make credibility determinations, or attempt to determine the truth of the matter." *Leonetti's Frozen Foods, Inc. v. Rew Mktg., Inc.*, 887 F.3d 438, 442 (8th Cir. 2018) (internal quotation marks omitted).

## II.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Jacqueline Travis brings this action as the Special Administrator of the Estate of Duan Travis, Plaintiff's late husband. The action arises out of a dispute over whether State Farm owes Plaintiff underinsured motorist coverage related to a vehicle accident in which her husband was killed. Plaintiff alleges two counts against Defendant State Farm based on Defendant's refusal to pay Plaintiff the underinsured motorist policy limits of $100,000: one count of breach of contract, and one count of vexatious refusal to pay.

The material facts in this case are undisputed. On February 11, 2021, Duan Travis was driving his brother Stanley Travis' vehicle in Illinois, with Stanley's consent, when the vehicle was rear-ended by William Free. Duan Travis was killed as a result of the accident. At the time of the accident, both William Free's vehicle and Stanley Travis's vehicle had policies of insurance issued by State Farm. State Farm and Plaintiff settled Plaintiff's claim under William Free's policy for $100,000, the maximum liability coverage limit under that policy. However, Plaintiff did not release her claim for underinsured motorist coverage under the policy State Farm had issued with regard to Stanley Travis' vehicle, insurance policy no. G95 9574-A17-13A (the "Travis Policy").

When Plaintiff requested $100,000 in underinsured motorist coverage under the Travis Policy, Defendant refused coverage on the ground that Mr. Free's liability coverage of $100,000 was equal to Stanley Travis's underinsured motorist coverage of $100,000. Defendant does not appear to dispute that Plaintiff has damages in excess of $200,000.

The relevant portions of the Travis Policy's underinsured motor vehicle coverage provisions are set forth below.

### UNDERINSURED MOTOR VEHICLE COVERAGE

This policy provides Underinsured Motor Vehicle Coverage for *bodily injury* in "W" is shown under "SYMBOLS" on the Declarations Page.

**Additional Definitions**

*Insured* means:

1. *you*;
2. *resident relatives*;
3. any other *person* while *occupying*:
    a. *your car*;
    b. *a newly acquired car*; or
    c. a *temporary substitute car*.
   Such vehicle must be used within the scope of *your* consent. Such *other person occupying* a vehicle used to carry *persons* for a charge is not an *insured*; and
4. any *person* entitled to recover compensatory damages as a result of *bodily injury* to an *insured* as defined in 1., 2., or 3. above.

*Underinsured Motor Vehicle* means a land motor vehicle:
1. the ownership, maintenance, and use of which is either:
    a.  insured or bonded for bodily injury liability at the time of the accident; or
    b. self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and

3

2. for which the total limits of insurance, bonds, and self-insurance for bodily injury liability from all sources:

   a. are less than the Underinsured Motor Vehicle Coverage limits of this policy; or

   b. have been reduced by payments to **persons** other than **you** and **resident relatives** to less than the Underinsured Motor Vehicle Coverage limits of this policy.

. . .

**Insuring Agreement**

**We** will pay compensatory damages for **bodily injury** an insured is legally entitled to recover from the owner or driver of an **underinsured motor vehicle**. The **bodily injury** must be:

1. sustained by an **insured**; and

2. caused by an accident that involves the operation, maintenance, or use of an **underinsured motor vehicle** as a motor vehicle.

**We** will pay only if the limits of liability or portion thereof under all bodily injury insurance bonds, policies, and self-insurance plans applicable to the **underinsured motor vehicle** and its operators have been partially or fully exhausted by payment of judgments or settlements, or have been offered to the **insured** in writing.
. . .

**Limits**

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".

   a. The most **we** will pay for all damages resulting from **bodily injury** to any one **insured** injured in any one accident, including all damages sustained by other **insureds** as a result of that **bodily injury** is the lesser of:

      (1) the limit shown under "Each Person" less those amounts actually recovered under the applicable bodily injury insurance policies, bonds, or other security maintained on the **underinsured motor vehicle**; or

4

> (2)     the total amount of all damages resulting from that ***bodily injury*** less those amounts actually recovered under the applicable bodily injury insurance policies, bonds, or other security maintained on the ***underinsured motor vehicle***.

Travis Policy, Doc. 36-2, at pp. 22-24.

The Declarations Page contains the symbol "W," and in the "Coverage & Limits" column, it indicates that the policy includes Underinsured Motor Vehicle Coverage with Bodily Injury Limits of $100,000 for each person and $300,000 for each accident. Travis Policy Declarations, Doc. 36-1, at p. 1.

The Travis Policy also contains the following relevant definitions:

> ***Resident Relative*** means a ***person***, other than ***you***, who resides primarily with the first ***person*** shown as a named insured on the Declarations Page and who is:
> 1.   related to that named insured or his or her spouse by blood, marriage, or adoption, including an unmarried and unemancipated child of either who is away at school and otherwise maintains his or her primary residence with that named insured; or
> 2.   a ward or a foster child of that named insured, his or her spouse, or a ***person*** described in 1. above.
> . . .
>
> ***You*** or ***Your*** means the named insured or named insureds shown on the Declarations Page. If a named insured shown on the Declarations Page is a ***person***, then "***you***" or "***your***" includes the spouse of the first ***person*** shown as a named insured if the spouse resides primarily with that named insured.

Travis Policy, Doc. 36-2, at pp. 4-5. The named insured on the Declarations Page is Stanley E. Travis. It is undisputed that neither Duan Travis nor Plaintiff Jacqueline Travis was a named insured under the Travis Policy, and that neither Duan Travis nor Plaintiff Jacqueline Travis was a resident relative under the Travis Policy.

5

### III.   DISCUSSION

#### A.  Choice of Law

As a preliminary matter, the Court must determine what state's law applies to this dispute. The Travis Policy contains a choice of law provision that states, in relevant part, "Without regard to choice of law rules, the law of the state of: a. Illinois will control in the event of any disagreement as to the interpretation and application of any provision in this policy . . . ." Travis Policy, Doc. 36-2, at p. 40. Defendant, citing this provision, argues that Illinois law applies. Plaintiff's position on the choice of law issue is not clear, but she cites both Illinois and Missouri cases in her briefing.

In a diversity case, "[i]n determining which state's law applies, [the court] look[s] to the choice of law principles of the forum state." *Miller v. Honkamp Krueger Fin. Servs., Inc.,* 9 F.4th 1011, 1016 (8th Cir. 2021) (quoting *Am. Fire & Cas. Co. v. Hegel*, 847 F.3d 956, 959 (8th Cir. 2017)); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Under Missouri law, "Generally, parties may choose the state whose law will govern the interpretation of their contractual rights and duties," and "[a] valid choice of law provision in a contract binds the parties." *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 601 (Mo. 2012). However, "where the application of the chosen law would be contrary to Missouri public policy, Missouri courts may instead choose to apply the law of their own state." *Maritz Holdings Inc. v. Certain Underwriters at Lloyd's London*, No. 4:18-CV-00825 SEP, 2020 WL 7023952, at *3 (E.D. Mo. Nov. 30, 2020) (citing *Sturgeon v. Allied Prof'ls Ins. Co.*, 344 S.W.3d 205, 209-11 (Mo. Ct. App. 2011))). *See also Simon v. Liberty Mut. Fire Ins. Co.*, No. 4:17-CV-0152-DGK, 2017 WL 6276256, at *2 (W.D. Mo. Dec. 8, 2017) ("A Missouri court will apply the law of another

6

jurisdiction so long as 'this law is not contrary to a fundamental policy of Missouri.'") (quoting *Sturgeon*, 344 S.W.3d at 210).

Plaintiff does not argue that Illinois law governing underinsured motorist coverage is contrary to a fundamental policy of Missouri, and the Court finds that it is not. "When the contract language is clear, as it is here, exceptions based on public policy must usually find support in necessary implication from statutory provisions." *Halpin v. Am. Fam. Mut. Ins. Co.*, 823 S.W.2d 479, 483 (Mo. 1992). As other courts have noted, "Missouri does not require [underinsured motor vehicle] coverage either by statute or by public policy," and thus "the contract between the insured and the insurer defines and limits coverage." *Long v. Shelter Ins. Cos.*, 351 S.W.3d 692, 696 (Mo. Ct. App. 2011). *See also Daughhetee v. State Farm Mut. Auto. Ins. Co.*, 743 F.3d 1128, 1131 (8th Cir. 2014) ("Because Missouri does not require [underinsured motor vehicle] coverage, 'the existence of the coverage and its ability to be stacked are determined by the contract entered between the insured and the insurer.'") (quoting *Rodriguez v. General Accident Ins. Co. of Am.*, 808 S.W.2d 379, 383 (Mo. banc 1991)).

For all of the above reasons, the Court finds that the Illinois choice of law provision should be honored, and the Court will therefore apply Illinois law to this dispute.

### B. General Principles of Insurance Policy Interpretation Under Illinois Law

Under Illinois law, "the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005). Accordingly, the court's "primary objective is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.*

"Where the terms of a policy are clear and unambiguous, the language used will be given its plain meaning; however, if a provision is subject to more than one reasonable interpretation, it is ambiguous and should be construed against the insurer and in favor of the insured." *Cherry v. Elephant Ins. Co., Inc.*, 94 N.E.3d 1265, 1269 (Ill. App. Ct. 2018). "All provisions of an insurance policy must be read together to aid interpretation and to determine whether an ambiguity exists." *Moruzzi v. CCC Servs., Inc.*, 171 N.E.3d 61, 66 (Ill. App. Ct. 2020). "Reasonableness is the key, and the touchstone is whether a policy provision is subject to more than one reasonable interpretation, not whether 'creative possibilities can be suggested.'" *Id.* (quoting *Cherry*, 94 N.E.3d at 1265).

## C.  Underinsured Motor Vehicle Coverage Under Illinois Law

Under Illinois law, "[t]he purpose of underinsured coverage is to put the insured in the same position he or she would have occupied had the at-fault vehicle carried liability coverage in the same amount as selected by the insured in his or her underinsured motor vehicle policy." *State Farm Mut. Ins. Co. v. Villicana*, 692 N.E.2d 1196, 1201 (Ill. 1998). *See also Safeway Ins. Co. v. Hadary*, 48 N.E.3d 732, 737-38 (Ill. App. Ct. 2016)) ("[T]he purpose of underinsured motorist coverage is to cover the shortfall between the amount of insurance contracted for and the amount received from the liable driver."); *Illinois Emcasco Ins. Co. v. Tufano*, 63 N.E.3d 985, 991, 993 (Ill. App. Ct. 2016) (noting the principle that "underinsured-motorist coverage exists to fill the gap between the amount received from the tortfeasor's insurance and the amount of the insured's underinsured-motorist policy limit" and stating that the public policy behind underinsured motorist coverage is "to place the policyholder in the same position as if the . . . underinsured motorist were

8

insured to the same extent as the policyholder"); *Berrey v. Travelers Indem. Co. of Am.*, 770 F.3d 591, 594 (7th Cir. 2014) (noting that under Illinois law, underinsured motorist coverage "is not intended to permit an injured [insured] to collect more than she would have been entitled to receive from the tortfeasor alone"). This purpose is set forth in the Illinois statute governing underinsured motor vehicle coverage, which defines an "underinsured motor vehicle" as follows:

> **a motor vehicle** whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and **for which the sum of the limits of liability under all bodily injury liability insurance policies** or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, **is less than the limits for underinsured coverage provided the insured as defined in the policy** at the time of the accident.

215 Ill. Comp. Stat. Ann. 5/143a-2(4) (emphasis added). The statute also provides that "[t]he limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." *Id.* However, "insurers *may* provide underinsured-motorist coverage beyond that mandated by statute." *Insura Prop. & Cas. Co. v. Steele*, 800 N.E.2d 91, 95 (Ill. App. Ct. 2003).

### D. Plaintiff's Breach of Contract Claim

Under Illinois law, "when an insurance company wrongfully refuses to pay a claim, the insured can bring a breach of contract claim to recover the amount due under the insurance policy." *KMK Metal Fabricators, Inc. v. Federated Mut. Ins. Co.*, No. 19-CV-00844-NJR, 2020 WL 1862733, at *3 (S.D. Ill. Apr. 14, 2020) (citing *Cramer v. Ins. Exch. Agency*, 675 N.E.2d 897, 900–01 (Ill. 1996)). "The essential elements of a breach of contract claim are: (1) the existence of a

9

valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resultant injury to the plaintiff." *Pepper Const. Co. v. Palmolive Tower Condominiums, LLC*, 59 N.E.3d 41, 66 (Ill. App. Ct. 2016).

The only issue in dispute in the parties' cross-motions for summary judgment is whether Plaintiff is entitled to underinsured motor vehicle coverage under the Travis Policy, such that Defendant's refusal to pay such coverage constituted a breach of contract. More specifically, the parties' briefs raise three questions: (1) whether Mr. Free's vehicle is an "underinsured motor vehicle," as that term is defined in the Travis Policy; (2) whether, assuming Mr. Free's vehicle is an "underinsured motor vehicle," the "Limits" section nonetheless limits Defendant's liability to zero in the situation here; and (3) whether, assuming the answer to both of those questions is yes, the Travis Policy contains a fundamental contradiction that must be resolved in Plaintiff's favor. The Court will address each question in turn.

### *1. Whether Mr. Free's Vehicle Is an "Underinsured Motor Vehicle" as Defined in the Travis Policy*

Under the Travis Policy,

> ***Underinsured Motor Vehicle*** means a land motor vehicle:
> 1.     the ownership, maintenance, and use of which is either:
>    a.     insured or bonded for bodily injury liability at the time of the accident; or
>    b.     self-insured under any motor vehicle financial responsibility law, any motor carrier law, or any similar law; and
> 2.     for which the total limits of insurance, bonds, and self-insurance for bodily injury liability from all sources:
>    a.     are less than the Underinsured Motor Vehicle Coverage limits of this policy; or

10

   b. have been reduced by payments to **persons** other than **you** and **resident relatives** to less than the Underinsured Motor Vehicle Coverage limits of this policy. . . .

 Plaintiff argues that William Free's vehicle qualifies as an underinsured motor vehicle under the plain language of the definition in paragraph 2b. She reasons that the coverage available from Mr. Free has been reduced by payments to a person—Plaintiff—who is neither "you" (the named insured, Stanley Travis) nor a "resident relative" of the named insured. She argues that because the coverage for Mr. Free's vehicle has been used up, in whole or in part, by those payments, the limits have been reduced. In the alternative, Plaintiff argues that her interpretation is at least one reasonable interpretation, and thus the definition is ambiguous and must be construed against the insurer.

 Defendant does not dispute that a $100,000 payment was made under Mr. Free's liability coverage to Plaintiff, nor does Defendant dispute that Plaintiff is a "person[] other than you and resident relatives." However, Defendant does dispute the assertion that Mr. Free's limits of insurance were "reduced"  by that payment. Defendant argues that because Plaintiff received the full $100,000 limit under Mr. Free's liability policy, that limit was not "reduced."

 The term "reduced" is not defined in the Travis Policy. The Illinois Supreme Court has stated that "[w]here a term in an insurance policy is not defined, we afford that term its plain, ordinary and popular meaning, i.e., we look to its dictionary definition." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1005 (Ill. 2010). As Defendant points out, the relevant dictionary definition of "reduce" is "to make (something) smaller in size, amount, number, etc." Merriam-

Webster Online, "reduce," https://www.merriam-webster.com/dictionary/reduced (last visited January 11, 2022).

Applying the plain-language definition of "reduced," Defendant's interpretation of the definition in paragraph 2b is the only reasonable one. The coverage available to Plaintiff under Mr. Free's policy was never made smaller in size or amount in any way. Plaintiff was entitled to $100,000 from Mr. Free's policy, and she received $100,000 from Mr. Free's policy, with no reduction.[1] Plaintiff's available coverage under Mr. Free's policy was $100,000, which she received in full; it was not "reduced."

Plaintiff's alternative reading—that the available coverage under Mr. Free's policy was "reduced" by the $100,000 *paid to Plaintiff herself*—is not a reasonable reading of the policy's plain language. A payment to a person does not reduce, or make smaller, the amount of the coverage available to that same person. To the extent that Plaintiff is arguing that the available coverage under Mr. Free's policy was "reduced" because the coverage is no longer available to some hypothetical third-party claimant, the Court also finds that interpretation unreasonable. The reduction contemplated in this definition of "underinsured motor vehicle," in a section of the policy describing the circumstances under which the insured is entitled to underinsured motorist coverage, is clearly a reduction in the amount of coverage available to the insured seeking underinsured motorist coverage—not the amount available to some hypothetical (and perhaps non-

---

[1] As Defendant points out, such a reduction could occur in a situation in which payments were made under Mr. Free's liability policy to others entitled to coverage for the same accident, thereby reducing the coverage available to an insured under the Travis Policy to something less than $100,000.

existent) third party. The Court also notes that under Plaintiff's reading, an insured would become (at least potentially) entitled to underinsured motor vehicle coverage *because she received payments* under the allegedly underinsured motor vehicle's policy. That is nonsensical under any possible understanding of underinsured motorist coverage.

In addition to being inconsistent with the plain language of the policy, Plaintiff's reading is at odds with the purpose of underinsured motorist coverage under Illinois law, which is to put the insured in the same position he or she would have occupied had the at-fault vehicle carried liability coverage in the same amount as selected by the insured in his or her underinsured motor vehicle policy. Plaintiff is already in that position, because Mr. Free *did* carry liability coverage in the same amount as the Travis Policy's underinsured motor vehicle policy ($100,000), and Plaintiff has already received the full limits of that coverage.

The Court is mindful of the rule that "if a provision is subject to more than one reasonable interpretation, it is ambiguous and should be construed against the insurer and in favor of the insured." *Cherry v. Elephant Ins. Co., Inc.*, 94 N.E.3d 1265, 1269 (Ill. App. Ct. 2018). However, because Plaintiff's strained reading is unreasonable, this provision is not ambiguous. *See Moruzzi v. CCC Servs., Inc.*, 2020 IL App (2d) 190411, ¶ 19, 171 N.E.3d 61, 66, reh'g denied (June 22, 2020) ("Reasonableness is the key, and the touchstone is whether a policy provision is subject to more than one reasonable interpretation, not whether creative possibilities can be suggested.") (internal quotation marks omitted). Under the plain language of the Travis Policy, Mr. Free's vehicle was not an underinsured motor vehicle. Thus, Plaintiff is not entitled to coverage under

the Travis Policy, and Defendant is entitled summary judgment. In the interest of completeness, however, the Court will also address the parties' remaining arguments.

### 2. *Whether the Limitation of Liability Limits Plaintiff's Recovery to Zero*

Defendant would be entitled to summary judgment even assuming, *arguendo*, that Plaintiff's reading of "underinsured motor vehicle" was correct, because the "Limits" section would preclude Plaintiff from recovering under the Travis Policy.

The limitation of liability provision of the Underinsured Motor Vehicle Coverage section of the Travis Policy provides:

> **Limits**
> 1.    The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under "Underinsured Motor Vehicle Coverage – Bodily Injury Limits – Each Person, Each Accident".
>    a.    The most **we** will pay for all damages resulting from ***bodily injury*** to any one **insured** injured in any one accident, including all damages sustained by other ***insureds*** as a result of that ***bodily injury*** is the lesser of:
>       (1)    the limit shown under "Each Person" less those amounts actually recovered under the applicable bodily injury insurance policies, bonds, or other security maintained on the ***underinsured motor vehicle***; or
>       (2)    the total amount of all damages resulting from that ***bodily injury*** less those amounts actually recovered under the applicable bodily injury insurance policies, bonds, or other security maintained on the ***underinsured motor vehicle***.

A plain reading of this provision suggests that Defendant's liability for damages resulting from bodily injury to "any one insured" for "any one accident" is limited to the lesser of $100,000 (***less amounts actually recovered under applicable insurance coverage on the underinsured***

14

*motor vehicle*) or the total amount of all damages resulting from "that bodily injury" (less amounts actually recovered under applicable insurance coverage on the underinsured motor vehicle). Here, there is no dispute that Plaintiff, who qualifies as an "insured" under the Travis Policy, had damages resulting from bodily injury in excess of $200,000. As such, under the limitations provision, Defendant's liability is limited to $100,000 less amounts recovered under applicable insurance on the underinsured motor vehicle. Because applicable insurance on the underinsured motor vehicle paid Plaintiff $100,000, the limits of Defendant's liability should be reduced to zero.

Plaintiff urges the Court to adopt a different reading of the "Limits" provision. Specifically, Plaintiff argues that, under the terms of the Travis policy, the $100,000 payment limitation cannot be reduced or offset by amounts paid out by an underinsured motor vehicle's insurance carrier unless the person who actually recovered from the underinsured motor vehicle's carrier was a named insured or resident relative.

This reading is inconsistent with the plain language of the Travis Policy. Reading the provision as a whole, there is nothing at all to suggest that "amounts actually recovered" refers to "you [the named insured] and resident relatives." Instead, the fact that the provision is stating that "the most we will pay . . . to any one insured . . . is . . . the limit shown under 'Each Person' . . . less those amounts actually recovered . . ." makes it is clear that the party whose "actual[] recover[y]" is being contemplated is the party whose payments are being limited in the opening paragraph—the "insured." Defendant's reading is consistent with the plain language of the provision, and Plaintiff's reading is unreasonable. Defendant's liability to Plaintiff is limited to

15

zero under this provision, providing another basis for granting summary judgment in Defendant's favor.

### 3. *Whether There is a Fundamental Contradiction in the Policy*

Plaintiff's final argument is that if the Court accepts Plaintiff's view of the definition of "underinsured motor vehicle" but accepts Defendant's view of the limit of liability clause, there is a fundamental contradiction in the policy that must be resolved in Plaintiff's favor. This argument fails because the Court finds Plaintiff's reading of the definition of "underinsured motor vehicle" to be unreasonable. However, even assuming that the Court had adopted Plaintiff's reading of the definition, this argument would still fail.

Plaintiff's argument is as follows: the policy defines Free's vehicle as an underinsured motor vehicle under the circumstances present here, the Declarations Page provides Underinsured Motor Vehicle Coverage with limits of $100,000, and the Insuring Agreement provides that State Farm "will pay compensatory damages for ***bodily injury*** an insured is legally entitled to recover from the owner or driver of an ***underinsured motor vehicle***"—all of which would lead a reasonable insured to believe she had underinsured motor vehicle coverage under these circumstances. If the limit of liability clause reduces that coverage to zero under these same circumstances, she argues, that creates a contradiction in the Travis Policy that must be resolved in her favor.

Plaintiff relies principally on one Illinois case for this argument: *Yates v. Farmers Auto. Ins. Ass'n*, 724 N.E.2d 1042 (Ill. App. Ct. 2000). In *Yates*, the court found a contradiction in a policy that appeared to both permit stacking of underinsured motorist coverage for multiple vehicles and to bar such stacking. *Id.* at 1045. In that case, the declarations page stated,

16

"COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY OR THE WORD 'INCLUDED' ARE SHOWN FOR COVERAGE." *Id.* Also on the declarations page, the row corresponding to uninsured/underinsured-motorist insurance stated limits of "50/100" and a premium of $5 under both "auto one" and "auto two." *Id.* The Limit of Liability section stated, "The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of: 1. 'Insureds,' 2. Claims made; 3. Vehicles or premiums shown in the Declarations; or 4. Vehicles involved in the accident." *Id.* at 1044. The court found that these two provisions were inconsistent and created an ambiguity, stating:

> The insurance policy contains provisions that are ambiguous and contradictory. In one part of the insurance policy, there is a provision claimed to be an antistacking provision. On the declarations page, the policy states that coverage is provided where a premium and a limit of liability are shown. On the declarations page, the policy shows limits of "50/100" and a premium under each of the two vehicles.

*Id.* at 1045. The Court resolved the ambiguity in favor of the insured and affirmed the circuit court's holding that she was entitled to $100,000 in underinsured motorist coverage, less a setoff for the amount received from the tortfeasor. *Id.*

The Court does not find *Yates* persuasive here. The court in *Yates* relied on a key fact that is not present here: the declarations page listed two separate $50,000 underinsured motorist liability limits, each with a separate premium, which could lead a reasonable insured to believe that she had $100,000 in underinsured motorist coverage. Indeed, the Illinois Supreme Court later noted that this was a material fact in the *Yates* decision, distinguishing the case before it (another case involving an arguable conflict between a declarations page and an anti-stacking provision) on

17

the ground that "the declarations page [in *Yates*] listed the underinsured-motorist limits twice—once for each of the two covered vehicles." *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 568-69 (Ill. 2005).[2] The Illinois Supreme Court also cautioned against finding an ambiguity merely because one portion of a policy, read in isolation, does not provide the insured with all of information relevant to coverage issues:

> Although it contains important information specific to the policyholder, the declarations page cannot address every conceivable coverage issue. Thus, some uncertainty could arise if the declarations page is read in isolation from the rest of the agreement. This is precisely why an insurance policy must be interpreted from an examination of the complete document. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill.2d 23, 50, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987). As our appellate court observed:
>
> > "Any provision of a lengthy document is bound to be ambiguous in the sense that it creates questions that can be answered only with reference to other portions of the document. That is why all provisions of an insurance policy must be construed together."
>
> *In re Estate of Striplin*, 347 Ill.App.3d 700, 706, 283 Ill.Dec. 414, 807 N.E.2d 1255 (2004).

*Hobbs*, 823 N.E.2d 561, 567-68 (Ill. 2005).

Here, the Court finds no misleading language on the Declarations Page or in the Insuring Agreement analogous to the language found in *Yates* that created a contradiction. The Declarations Page shows that Plaintiff had $100,000 in underinsured motorist coverage, and she did have $100,000 in underinsured motorist coverage—she had sufficient coverage to ensure that she would receive $100,000 for injuries caused by an at-fault driver, even if that full amount was not available

---

[2] *Yates* has also been criticized, and its approach is not consistently followed by Illinois courts. *See, e.g.*, *In re Est. of Striplin*, 807 N.E.2d 1255, 1258 (Ill. App. Ct. 2004) (declining to follow *Yates* and discussing cases addressing ambiguity and anti-stacking clauses).

from that driver's own policy. As to the Insuring Agreement, it states that Defendant "will pay compensatory damages for ***bodily injury*** an insured is legally entitled to recover from the owner or driver of an ***underinsured motor vehicle***," but it promises no particular amount; thus, it is subject to the limitations in the remainder of the policy, as no reasonable insured would interpret it as requiring State Farm to pay an unlimited amount of compensatory damages. The Limits provision, later in the same section, tells the insured what that limit is in very plain terms. When the policy is read as a whole, there is no contradiction and no ambiguity.

For all of the above reasons, even assuming, *arguendo*, that the Court were to accept Plaintiff's interpretation of the underinsured motor vehicle definition and Defendant's interpretation of the limitation of liability provision, the Court finds no ambiguity in the Travis Policy as a whole.

### D.  Plaintiff's Vexatious Refusal Claim

Defendant also seeks summary judgment on Plaintiff's vexatious refusal claim, arguing that because Plaintiff is not entitled to coverage under the Travis Policy, she cannot succeed on a vexatious refusal claim. Plaintiff does not provide any response to this argument.

The Court agrees with Defendant that Defendant is entitled to summary judgment on this claim. Defendant relies on Missouri law for its argument, but the result is the same under either Missouri or Illinois law. Under Missouri law, "[a] claim of vexatious refusal to pay requires proof (1) of an insurance policy, (2) of the insurer's refusal to pay and (3) that the insurer's refusal was without reasonable cause or excuse." *D.R. Sherry Const., Ltd. v. Am. Fam. Mut. Ins. Co.*, 316 S.W.3d 899, 907 (Mo. 2010). Because the Court has determined that Defendant's refusal to pay

was correct under the terms of the policy, Defendant had reasonable cause for the refusal to pay, and Plaintiff cannot establish the third element. *See, e.g., Smith v. Zurich Am. Ins. Co.*, No. 4:16CV00187 ERW, 2017 WL 3168566, at \*5 (E.D. Mo. July 26, 2017) (granting insurer's motion for summary judgment on vexatious refusal claim; stating, "the Court has determined Plaintiff's claims were excluded under the insurance policy, therefore, [the insurer] had reasonable cause to refuse to pay Plaintiff's claim, defeating one of the elements of his claim. Plaintiff cannot establish a claim for vexatious refusal to pay.").

Under Illinois law, section 155 of the Insurance Code, 215 ILCS 5/155, "allows for an extracontractual remedy of attorney fees and costs for an insurer's unreasonable and vexatious refusal to comply with its policy obligations." *Illinois State Bar Ass'n Mut. Ins. Co. v. Cavenagh*, 983 N.E.2d 468, 479 (citing *Cramer v. Insurance Exchange Agency*, 174 N.E.2d 897 (Ill. 1996), and 215 ILCS 5/155(1); internal quotation marks omitted). "But 'where the policy does not apply, there can be no finding that the insurer acted vexatiously and unreasonably [in denying a claim].'" *Id.* (quoting *American Family Mut. Ins. Co. v. Fisher Dev., Inc.*, 909 N.E.2d 274 (Ill. App. Ct. 2009)). *See also M&E Bakery Holdings, LLC v. Westfield Nat'l Ins. Co.*, 538 F. Supp. 3d 816, 823-24 (N.D. Ill. 2021) ("[W]hen an insurer denies the claim of an insured because no coverage exists, the insurer has not failed to honor its contractual obligations under an insurance policy. As such, Illinois courts allow a cause of action to proceed under Section 155 only if the insurer owed the insured benefits under the terms of the policy." (internal quotation marks and citations omitted). Because Defendant does not owe Plaintiff benefits under the terms of the policy, it has

20

not failed to honor its contractual obligations, and no cause of action under Section 155 may proceed.

For all of the above reasons, the Court will grant summary judgment in favor of Defendant on the vexatious refusal claim.

### IV.    CONCLUSION

For the reasons stated above, Plaintiff is not entitled to underinsured motorist coverage under the Travis Policy, and Defendant State Farm is entitled to summary judgment on both of Plaintiff's claims. Accordingly,

**IT IS HEREBY ORDERED that** Defendant State Farm Mutual Automobile Insurance Company's Motion for Summary Judgment (Doc. 34) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 36) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED.** A separate judgment shall accompany this Memorandum and Order.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated: January 21, 2022

21